**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____ :
                              :
DANIEL REYES ESCRIBANO,       :        Civil No.  07-3204 (RBK)
                              :
          Petitioner,         :
                              :
     v.                       :        OPINION
                              :
PAUL SCHULTZ, WARDEN,         :
                              :
          Respondent.         :
_____ :
```

**APPEARANCES:**

> DANIEL REYES ESCRIBANO, Petitioner pro se
> # 16995-069
> F.C.I. Fairton
> P.O. Box 420
> Fairton, New Jersey 08320
>
> Christopher J. Christie, United States Attorney
> Neil R. Gallagher, Assistant U.S. Attorney
> 970 Broad Street, Room 702
> Newark, New Jersey  07102

**KUGLER, District Judge**

Petitioner, Daniel Reyes Escribano ("Escribano"), a federal prisoner confined at F.C.I. Fairton in Fairton, New Jersey, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his sentence computation by the Bureau of Prison's ("BOP"), and seeking prior custody credit towards his federal sentence for the time period from September 21, 1999 through May 29, 2003.  The named respondent is the Warden, Paul Schultz, at F.C.I. Fairton.

On September 20, 2007, respondent submitted a response to the petition with documents (namely, a portion of the presentence report) to be filed under seal.  Petitioner filed objections thereto, on or about October 16, 2007.  This Court has reviewed the written submissions of the parties, and for the reasons stated below, the Court will deny the petition.

I.  BACKGROUND

On June 24, 1997, Escribano was convicted and sentenced to twelve (12) years imprisonment on eleven counts of weapons violations in a local court in Carolina, Puerto Rico.  This sentence was suspended and petitioner was placed on probation. About 18 months later, on December 18, 1998, Escribano was arrested by local officials for attempted murder, and on the next day, December 19, 1998, he was charged with new weapons offenses in local court in Puerto Rico.  On September 21, 1999, the attempted murder charge was dismissed.  On September 24, 1999, Escribano's probation for the eleven weapons violations was revoked, and he was ordered to serve the twelve-year suspended sentence, which had been imposed in 1997.  On September 27, 1999, Escribano was sentenced to serve six months in prison on each count of the 1998 weapons charges, to run concurrently with each other but consecutive to any other charges.[1]  (See Respondent's

---

[1]  Petitioner alleges that this six month sentence was discharged on September 21, 1999, as time served.

2

Declaration of Cheryl A. Pauley, BOP Correspondence Specialist, dated August 17, 2007, at ¶¶ 4, 5, and Exhibit C).

On September 5, 2006, in response to an inquiry from a BOP Legal Instruments Examiner at FCI Fairton, the Criminal Records Office of the Administration of Corrections, Puerto Rico, advised the BOP that Escribano was arrested by local authorities on January 28, 1999.[2]  On February 2, 1999, Escribano was released by the Puerto Rico authorities to the U.S. Marshal's Service pursuant to a writ of habeas corpus *ad prosequendum* issued by the United States District Court for the District of Puerto Rico on federal charges related to the 1998 attempted murder and weapons charges by local authorities in Puerto Rico.  The 1998 non-federal charges, as well as the violation of the non-federal probation charge, were still pending against Escribano.  He was sentenced on the these non-federal charges in September 1999.  However, Escribano remained in federal custody until October 3, 2003, when he was returned to the custody of the Administration of Corrections, Puerto Rico.  During this time in federal

_____

[2]  The date of January 28, 1999 is the date Escribano entered the correctional system of the Puerto Rico Administration of Corrections, and appears to be the date federal authorities were informed of petitioner's arrest.  (See Pauley Decl. at Ex. D).  The record shows that Escribano's initial date of arrest by local authorities was December 18, 1998, on attempted murder charges.  Escribano later was charged with new weapons violations on December 19, 1998.  Any discrepancy between the dates of January 28, 1999 and December 18, 1998 is immaterial to this Court's determination of Escribano's habeas claim because both dates precede the date Escribano was writted to federal custody.

custody, Escribano was convicted and sentenced on May 29, 2003 on the federal charges that had been pending against him.

Specifically, with respect to his federal charges, Escribano pled guilty on February 18, 2003, and was convicted in the United States District Court for the District of Puerto Rico for violating federal offense 18 U.S.C. § 1951(a), conspiracy to interfere with commerce by extortion.  On May 29, 2003, Escribano was sentenced to 151 months in prison to be served concurrently with his sentence being served in a Puerto Rico local court.  The court also ordered that Escribano be credited for time already served in connection with his federal offense.  (Exhibit A to Pauley Decl., Judgment and Commitment Order).  Escribano remained in federal custody until October 3, 2003, at which time he was returned to Puerto Rican authorities.  Escribano was confined by these non-federal authorities from October 3, 2003 until June 7, 2005, when he was released to federal custody.  (Pauley Decl. at Exhibit D).

The BOP alleges that Escribano's federal sentence began on May 29, 2003, the day it was imposed, when the BOP designated Puerto Rico for service of petitioner's federal sentence.  The BOP further granted Escribano credit from January 28, 1999, the date petitioner was arrested by local authorities, through September 20, 1999, the date Escribano was sentenced by the local court, pursuant to Willis v. United States, 438 F.2d 923 (5th

4

Cir. 1971).  The BOP declined to credit Escribano for the time he served from September 21, 1999 through May 29, 2003, because this period was credited towards his local Puerto Rico sentence.  See 18 U.S.C. § 3585(b).

The Government concedes that Escribano exhausted his administrative remedies with respect to the claims raised in this petition.

## II.  CLAIMS PRESENTED

Escribano seeks credit for the time period between September 21, 1999 through May 29, 2003.  He first alleges that federal government had primary jurisdiction over him for the entire time that he was held in a federal detention center while his criminal case was pending in the United States District Court for the District of Puerto Rico.  Escribano contends that Puerto Rico's primary jurisdiction over him ended on September 21, 1999, when he was sentenced to time served with respect for all state charges lodged against him.

Second, Escribano argues that the federal court intended his federal sentence to run concurrently with the earlier-imposed state sentence, requiring a nunc pro tunc designation of the Puerto Rican state prison as his place of federal confinement.  Thus, in order to effectuate this intent, the federal court intended that Escribano receive full credit towards his federal

sentence for the time he spent in custody from September 21, 1999 through May 29, 2003.

Finally, Escribano contends that the United States Sentencing Guidelines ("U.S.S.G.") at Section 5G1.3(c), permits the federal court to award a concurrent sentence in a manner that would require the BOP to calculate petitioner's sentence such that Escribano would be credited with the time he was held in custody from September 21, 1999 through May 29, 2003.  Escribano relies on Rios v. Wiley, 201 F.3d 257 (3d Cir. 2000).

The respondent opposes the petition, countering that Puerto Rico did not relinquish primary jurisdiction over petitioner on September 21, 1999, and that Escribano's federal sentence has been calculated in accordance with federal law and regulations as well as with the intent of the federal sentencing court.  More specifically, respondent argues that Escribano is not entitled to receive prior custody credit for the time period between September 21, 1999 through May 29, 2003, because that would constitute double credit contrary to 18 U.S.C. § 3585(b).

### III.  ANALYSIS

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance.

6

See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989).  Because Escribano is proceeding pro se in his application for habeas relief, the Court will accord his petition the liberal construction intended for pro se litigants.

A.   Jurisdiction

    Section 2241 of Title 28 of the United States Code provides in relevant part:

> (c) The writ of habeas corpus shall not extend to a prisoner unless– . . . He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(a), (c)(3).

    "Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." Coady v. Vaughn, 251 F.3d 480, 485-486 (3d Cir. 2001).  A petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the district where the prisoner is confined provides a remedy "where petitioner challenges the effects of events 'subsequent' to his sentence."  Gomori v. Arnold, 533 F.2d 871, 874 (3d Cir. 1976)(challenging erroneous computation of release date).  See also Soyka v. Alldredge, 481 F.2d 303 (3d Cir. 1973)(where petitioner alleged a claim for credit for time served prior to federal sentencing).

Moreover, if the BOP erred in calculating Escribano'

sentence by not applying credit for the time he spent in state

custody, then Escribano would be entitled to immediate release

from prison, and his continued confinement would constitute a

miscarriage of justice that can be corrected only through habeas

corpus.  Murray v. Carrier, 477 U.S. 478, 495 (1986); Barden v.

Keohane, 921 F.2d 476 (3d Cir. 1991).

Accordingly, this Court has subject matter jurisdiction

under § 2241 to consider this matter since Escribano does not

challenge the imposition of the sentence, but instead challenges

the execution of the sentence based on the BOP's alleged error in

not giving him credit against his federal sentence for the full

time served in state custody, and because he was confined in New

Jersey at the time he filed his petition.  See Vega v. United

States, 493 F.3d 310, 313 (3d Cir. 2007)(challenge to BOP's

failure to give credit for time served prior to federal

sentencing is cognizable under § 2241);  See Barden v. Keohane,

921 F.2d at 478-79 (challenge to BOP's refusal to decide whether

to designate state prison as a place of federal confinement); 2

James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice

and Procedure § 41.2b (3rd ed. 1998).

B.  Computation of Federal Sentence

The Attorney General is responsible for computing federal

sentences for all offenses committed on or after November 1,

1987, see 18 U.S.C. § 3585; United States v. Wilson, 503 U.S. 329 (1992), and has delegated that authority to the Director of the Bureau of Prisons under 28 C.F.R. § 0.96 (1992). See United States v. Brann, 990 F.2d 98, 103-04 (3d Cir. 1993).

Computation of a federal sentence is governed by 18 U.S.C. § 3585, and is comprised of a two-step determination: first, the date on which the federal sentence commences and, second, the extent to which credit may be awarded for time spent in custody prior to commencement of the sentence ("prior custody credit").

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence. 18 U.S.C. § 3585(a), (b).

There are three ways that an inmate can accrue federal jail credit: (1) credit for time spent in custody while actually serving a federal sentence; (2) credit for prior custody under 18

U.S.C. § 3585(b); and (3) credit for time spent in non-federal pre-sentence custody during which the inmate is denied bail because of a federal detainer, commonly referred to as "Willis" credit.  See Willis v. United States, 438 F.2d 923 (5th Cir. 1971).

Section 3585(b) allows an inmate to use time served in custody prior to the imposition of a sentence towards the completion of that sentence when the custody was "(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence." This last clause provides that time spent in custody cannot be credited toward a federal sentence if it was used to satisfy a non-federal sentence.  The Supreme Court has made clear that inmates are not allowed to "double count" credit.  See United States v. Wilson, 503 U.S. 329 (1992).

While § 3585(b) governs calculation of a sentence by the BOP, § 3584 gives the federal sentencing court the power to impose a sentence that runs concurrent to a state sentence. Section 3584 provides:

(a) Imposition of concurrent or consecutive term. - If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run

10

consecutively for an attempt and for another offense that was the sole objective of the attempt.  Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively.  Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

(b) Factors to be considered in imposing concurrent or consecutive terms. - The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

(c) Treatment of multiple sentence as an aggregate. - Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

18 U.S.C. § 3584; see also Ruggiano v. Reish, 307 F.3d 121, 132 (3d Cir. 2002)(sentencing court has authority under 18 U.S.C. § 3584 and United States Sentencing Guidelines § 5G1.3(c) to order a federal sentence to be fully and retroactively concurrent to a state sentence the defendant was already serving).

Also relevant to this petition is the concept of "primary jurisdiction."  When two different sovereigns have custody of a criminal defendant over time, the general rule is that the sovereign who first acquires custody has primary jurisdiction over the defendant.  Chambers v. Holland, 920 F. Supp. 618, 622 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996).  Primary jurisdiction remains vested in the jurisdiction which first arrested defendant until that jurisdiction relinquishes its

11

priority by bail release, dismissal of state charges, parole release, or expiration of sentence.  Id.

C.  Puerto Rico Retained Primary Jurisdiction Over Petitioner
    During the Time Petitioner Was in Federal Custody

     Generally, as referenced above, the sovereign which first arrests an individual acquires primary jurisdiction for purposes of trial, sentencing, and incarceration.  The arresting sovereign retains primary jurisdiction unless it relinquishes it by (1) releasing the prisoner on bail; (2) dismissing the charges; (3) releasing the prisoner on parole; or (4) the expiration of the sentence.  U.S. v. Cole, 416 F.3d 894, 897 (8th Cir. 2005); Chambers, 920 F.  Supp. at 622.  A sovereign does not relinquish authority by producing a state prisoner for sentencing in a federal court via a writ of habeas corpus ad prosequendum.  See Cole, 416 F.3d at 896-897; Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir. 1991); Chambers, 920 F. Supp. at 622.

     In this case, Escribano argues that the federal government had assumed primary jurisdiction over him while he was detained at the federal detention center in Puerto Rico during his federal criminal proceedings, and therefore, the relevant time period between September 21, 1999 through May 29, 2003 should count towards service of his federal sentence.  Escribano disputes respondent's contention that petitioner's non-federal sentence began on September 21, 1999, when it was imposed.  Rather, Escribano contends that, on September 21, 1999, he was sentenced

12

to an aggregated term of six months imprisonment, which was discharged that same date as time served.  Consequently, petitioner asserts that Puerto Rico no longer had primary jurisdiction over him after September 21, 1999 and through May 29, 2003, when his federal sentence was imposed.

This Court finds that the record in this case does not support petitioner's contention.  Specifically, the record shows that Puerto Rico had primary jurisdiction because the Puerto Rico authorities first arrested Escribano, on December 18, 1998 and/or January 28, 1999.  Thus, even though Escribano was borrowed from the Puerto Rico authorities by federal authorities pursuant to a writ of habeas corpus *ad prosequendum* on February 2, 1999, Puerto Rico did not relinquish its primary jurisdiction over Escribano because the non-federal charges on his 1998 weapons charges and on the older violation of probation charge were still pending.  Consequently, this Court finds that Escribano remained under the primary jurisdiction of Puerto Rico until released by the Puerto Rico authorities on June 2, 2005, when he completed his non-federal sentence.  See Rios v. Wiley, 201 F.3d 257, 274-76 (3d Cir. 2000).[3]

---

[3]  Rios was superseded by statute on unrelated grounds to the extent that the court applied a version of the United States Sentencing Guidelines § 5G1.3 prior to its amendment, effective November 1, 1995.  See United States v. Saintville, 218 F.3d 246, 247 (3d Cir. 2000).

13

This Court further rejects Escribano's contention that the Puerto Rico authorities relinquished primary jurisdiction over him on September 21, 1999, when he purportedly was sentenced to time served (on an aggregate 6 month sentence) as to the new weapons charges issued against him with respect to his arrest on January 28, 1999.  This argument disregards the record, which confirms that Escribano also had pending probation violation charges stemming from his 1997 conviction on 11 non-federal weapons charges.  Escribano actually was sentenced on September 21, 1999, while he was in federal custody, to serve 12 years in prison for violating probation with respect to his 1997 non-federal conviction.  Escribano was not sentenced on the separate, new weapons charges pertaining to petitioner's December 1998 arrest, until September 27, 1999.  Consequently, Puerto Rico did not relinquish primary jurisdiction over petitioner on February 2, 1999, when Escribano was merely loaned to the federal authorities for trial relating to his federal conspiracy charge under 18 U.S.C. § 1951(a), because it was clear petitioner had pending non-federal charges to be resolved.

Furthermore, Escribano provides no evidence to show that Puerto Rico had relinquished primary jurisdiction when he was loaned to the federal authorities on February 2, 1999.  He also fails to show that he had satisfied the non-federal charges on September 21, 1999, or that he was released on bail, or that he

14

had completed service of his non-federal sentences.  In fact, Escribano was returned to the custody of Puerto Rico on October 3, 2003, so that he could complete his state sentences before serving his unrelated federal charges.  Therefore, this Court finds that Puerto Rico retained primary jurisdiction over petitioner after he was loaned to the federal authorities on February 2, 1999 and until he had completed service of his non-federal sentence on June 2, 2005.  Primary jurisdiction did not revert to the United States until Escribano was transferred to the BOP for service of his federal sentence.  See Del Guzzi v. United States, 980 F.2d 1269 (9th Cir. 1992).

D.    Commencement of Petitioner's Federal Sentence

        Title 18 of the United States Code, section 3585(a) states:

        A sentence to a term of imprisonment commences on the
        date the defendant is received in custody awaiting
        transportation to, or arrives voluntarily to commence
        service of sentence at, the official detention facility
        at which the sentence is to be served.

        Here, this Court finds that Escribano's federal sentence commenced on the date it was imposed, May 29, 2003, and not on the date he was transferred to federal custody on June 2, 2005, to serve the remaining time on his federal sentence.  This decision reflects the fact that the sentencing judge had ordered Escribano's federal sentence to run concurrently with the non-federal sentence Escribano was serving at the time of his federal sentencing.  Thus, to achieve the intent of the sentencing court

15

and allow the federal sentence to commence accordingly, the BOP correctly designated, <u>nunc</u> <u>pro</u> <u>tunc</u>, the non-federal correctional facility for service of Escribano's federal sentence.

The BOP's determination as to the commencement of Escribano's federal sentence is consistent with § 3585(a). Petitioner's federal sentence commenced on the day it was imposed, as he was in the primary jurisdiction of Puerto Rico and his federal sentence could not start any earlier than the date on which it was imposed.  <u>See</u> <u>Shelvy v. Whitfield</u>, 718 F.2d 441, 444 (D.C. Cir. 1983); <u>United States v. Flores</u>, 616 F.2d 840, 841 (5th Cir. 1980).

E.   <u>Prior Custody Credit from September 21, 1999 to May 29, 2003</u>

Escribano's primary claim is that the BOP erred in refusing to award him prior custody credit for the period of time from September 21, 1999 through May 29, 2003, when petitioner was confined at the federal detention center in Puerto Rico.  The BOP had awarded him prior custody credits for the time period of January 28, 1999 through September 20, 1999, in accordance with <u>Willis v. United States</u>, <u>supra</u>.[4]

The respondent argues that Escribano is entitled to prior custody credit only if it is in accord with 18 U.S.C. § 3585(b).

_____

   [4]  This Court notes that the BOP properly credited Escribano with the time he spent in federal custody pursuant to the writ of habeas corpus <i>ad prosequendum</i> not because he was in primary federal custody during that time, which he was not, but because that time was not credited to Escribano's state sentence.

16

Specifically, respondent contends that an award of prior custody credit for the time period of September 21, 1999 through May 29, 2003 is prohibited because it would be a double credit contrary to the provisions of 18 U.S.C. § 3585 (b).

The Supreme Court expressly noted that, under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." United States v. Wilson, 503 U.S. 329, 337 (1992); see also Rios v. Wiley, 201 F.3d at 274. This ban on double credits also applies to those situations where the petitioner is in federal detention under a writ of habeas corpus *ad prosequendum* during the time for which presentence credits are sought. Rios v. Wiley, supra. Thus, respondent argues, under § 3585(b), prior custody credits may only be granted in this case for the time Escribano spent in federal detention for which he did not receive credit towards another sentence.

Here, the time Escribano spent in custody at a federal detention center, from September 21, 1999 to May 29, 2003, purportedly was credited towards his non-federal sentence imposed on September 21, 1999. Therefore, respondent contends that Escribano is not entitled to credit his federal sentence with time already credited against his non-federal sentence. See Wilson, 503 U.S. at 337; Rios v. Wiley, 210 F.3d at 274.

17

Escribano claims, however, that the federal sentencing court intended to credit petitioner for this period of time in federal custody, from September 21, 1999 to May 29, 2003.  It would appear that Escribano is arguing that the sentencing court intended to make his federal sentence retroactively concurrent with petitioner's state sentence.  Escribano contends that Section 5G1.3(c)[5] of the U.S. Sentencing Guidelines ("U.S.S.G.") allows a federal court to award a concurrent sentence in a manner that would require the BOP to give credit for the time petitioner spent in federal detention even though that time already was credited toward service of his non-federal sentence.  In this regard, Escribano relies upon Rios v. Wiley, and argues that neither § 3585(b) or Wilson limits a sentencing court's authority to apply U.S.S.G. § 5G1.3(c) and impose a concurrent sentence that would ensure that a federal sentence, while imposed at a

---

[5]  A federal court's authority to order that terms of imprisonment imposed at different times shall run concurrently is limited to cases in which the federal term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment.  18 U.S.C. § 3584(a).  Under U.S.S.G. § 5G1.3(c), the court may impose a sentence "to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."  U.S.S.G. § 5G1.3(c).  Further, under U.S.S.G. §5G1.3(b), a concurrent sentence is mandatory and shall be imposed to run concurrently to an undischarged sentence when "the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense."  U.S.S.G. § 5G1.3(b).

later time, took into account prior time served on an unrelated
state sentence.

This Court finds <u>Ruggiano v. Reish</u>, 307 F.3d 121 (3d Cir.
2002)[6] to be instructive here.  In <u>Ruggiano</u>, the United States
Court of Appeals for the Third Circuit held that in imposing a
sentence, a district court may grant an adjustment for time
served on a preexisting sentence pursuant to U.S.S.G. § 5G1.3(c).
Under <u>Ruggiano</u>, a sentencing court may exercise this option to
grant an adjustment under § 5G1.3(c) by making the federal
sentence concurrent with the state sentence for the full period
of the preexisting sentence (retroactively concurrent) or only

---

[6]  In <u>Ruggiano</u>, the United States Court of Appeals for the
Third Circuit held that in imposing a sentence, a federal
district court may grant an "adjustment" for time served on a
pre-existing sentence pursuant to U.S.S.G. § 5G1.3(c).  Notably,
the application note 3(E) to § 5G1.3 (U.S. Sentencing Guidelines
Manual § 5G1.3 cmt. N. 3(E)(2003)) appears to be in conflict with
the holding in <u>Ruggiano</u>.  The note provides that, "subsection (c)
does not authorize an adjustment of the sentence for the instant
offense for a period of imprisonment already served on an
undischarged term of imprisonment."  Although credit may be given
in extraordinary circumstances for time served on a pre-existing
sentence, the credit is properly deemed a downward departure and
not an adjustment.  Notwithstanding this note, <u>Ruggiano</u> remains
the controlling precedent.  While the Third Circuit has addressed
the effect of note 3(E) on the <u>Ruggiano</u> holding, and has found
that the note abrogated <u>Ruggiano</u>, it has not done so in a
"precedential" opinion.  <u>See</u> <u>United States v. Destio</u>, 153 Fed.
Appx. 888, 893-94 (3d Cir. 2005).

This Court further observes that application note 3(E) to
U.S.S.G. § 5G1.3 became effective on November 1, 2003, after
Escribano's federal sentence was imposed.

concurrent for the remainder of the preexisting sentence from the date when the federal sentence was imposed.

Of relevance in Ruggiano, the sentencing judge stated "that he thought it appropriate to go ahead and recommend that [Ruggiano's sentence] be served concurrently and that he receive credit for the amount of time that he served there." Id., 307 F.3d at 124. "Then, in his written judgment, [the sentencing judge] recited that Ruggiano's sentence was to 'run concurrent with State sentence. Defendant to receive credit for time served.'" Id. The Third Circuit found that this language conveyed an intent of the sentencing judge to grant an adjustment by making the federal sentence retroactively concurrent for the entire period of the state sentence pursuant to § 5G1.3(c).

Here, the Judgment and Commitment Order issued by the federal sentencing court shows that the court imposed a term of imprisonment, pursuant to a plea agreement, of "one hundred and fifty-one (151) months to be served concurrently with the sentence being served in local court. Time already served in connection with this offense shall be credited." (Pauley Decl. at Exhibit A). On its face, it would seem that the language of the Judgment and Commitment Order tracks the sentencing language used in the Ruggiano case, in which the Third Circuit found an intent by the sentencing court to impose a retroactively concurrent sentence.

20

The sentencing transcript, however, is not so clear.  There, Escribano's counsel had asked the sentencing court to adjust or credit Escribano's sentence for the time petitioner spent in federal custody in accordance with 18 U.S.C. § 3585(b)(2).  The pertinent part of the transcript reads, as follows:

> MR. DIAZ-REVERON: Yes.  We also request that pursuant to Section 3585(b)(2) of the Rules of Criminal Procedure, that the time that the defendant spent in official detention waiting for the sentence be credited in this sentence, which is from February 2, 1999.
> THE COURT: That credit is available for detention in this case; that is, Criminal Number 99-44.  If he's being detained for other cases, it doesn't count, but for this case, it does count.
>
> MR. DIAZ-REVERON: He's being detained for this case.
>
> THE COURT: That time served will be credited.

(Petitioner's Exhibit E, Sentencing Transcript at 5:10-6:2). Based on this minimal colloquy by the sentencing court, this Court finds no clear intention by the sentencing judge to adjust Escribano's sentence in a manner inconsistent with § 3585(b).

Because the imposition of a concurrent sentence normally means that the sentence being imposed is to run concurrently with the *undischarged* portion of the earlier-imposed sentence, it is unlikely that a sentencing court would deviate from the norm and impose a retroactively concurrent sentence without any discussion.  See 18 U.S.C. § 3584; Ruggiano, 307 F.3d at 133. (3d Cir. 2002).  Indeed, in those cases where the reviewing court found that the sentencing judge intended to impose a

retroactively concurrent sentence, the sentencing court had engaged in a dialog on the issue of credit for time served and had explicitly directed that the defendant receive credit retroactive to the commencement date of defendant's earlier-imposed sentence.  Ruggiano, 129 F.3d at 131, 135.

Moreover, when there is an ambiguity between the oral pronouncement of a sentence and the written sentence, as appears to be the case here, the court may recognize that the oral sentence "often consists of spontaneous remarks" that are "addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of the surrounding law," and it is therefore essential to consider the context in which the statement is made.  Ruggiano, 307 F.3d at 133-34.

In this case, there was no discussion that would suggest that the sentencing court intended a retroactively concurrent sentence.  The sentencing court stated only that Escribano would be entitled to receive credit for the time he had been in federal detention before the imposition of his federal sentence if such detention was related to his federal offense.  The court did not mention the application of U.S.S.G. § 5G1.3(c) during the sentencing hearing.  There is no indication of any kind in the transcript provided that the sentencing court intended to credit petitioner for time served on his non-federal sentence that was credited to his non-federal sentence, which would be contrary to

22

18 U.S.C. § 3585(b).  In fact, the transcript shows that the sentencing court was giving credit only for time served related to the federal offense in accordance with § 3585(b).

This Court also notes that the sentencing court imposed a sentence of 151 months, which was at the bottom of the guideline imprisonment range of 151 to 188 months given Escribano's total offense level and criminal history.  Thus, there does not appear to be any basis for the sentencing court to further "adjust" Escribano's sentence downward, especially where the time period in question was already credited towards Escribano's state sentence unrelated to the federal sentence.  While the sentencing judge need not cite applicable statutory or sentencing guidelines when imposing the sentence, see Ruggiano, 129 F.3d at 134, in this case, there is simply no expression of intent by the court at the sentencing hearing to impose a retroactively concurrent sentence as that found in Ruggiano.

Finally, to the extent that Escribano is seeking credit for the period of time he spent in federal custody pursuant to the federal writ of habeas corpus *ad prosequendum*, his claim is without merit.  See Ruggiano, 307 F.3d at 125 n.1 ("time spent in federal custody pursuant to a writ *ad prosequendum* is credited toward his state sentence, not his federal sentence.").  Therefore, this Court finds that the BOP did not err in its calculation of Escribano's federal sentence and in its denial of

credit for the time Escribano spent in federal custody on a writ *ad prosequendum* from September 21, 1999 through May 29, 2003, because this time period was credited towards petitioner's non-federal sentence, and such would constitute double credit in violation of 18 U.S.C. § 3585(b).  Without express and specific direction from the sentencing court otherwise, the BOP's decision concerning the calculation of Escribano's sentence and the award of prior custody credit is mandated and limited by 18 U.S.C. § 3585(a) and (b).  The habeas petition is denied accordingly.

<u>**CONCLUSION**</u>

Based on the foregoing, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is hereby denied.  An appropriate Order accompanies this Opinion.

                                        S/Robert B. Kugler
                                        ROBERT B. KUGLER
                                        United States District Judge
Dated: March 24, 2008

24